1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IRMA SANTANA and RAFAEL
SANTANA,

                              Plaintiffs,

v.

BSI FINANCIAL SERVICES, INC.; U.S.
BANK TRUST N.A. AS TRUSTEE OF
THE SCIG SERIES III TRUST; AND,
DOES 1 THROUGH 10 INCLUSIVE,,

                              Defendants.

Case No.:  20cv1577-GPC(WVG)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS WITH
LEAVE TO AMEND**

**[Dkt. No. 3.]**

     Before the Court is Defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 3.)  Plaintiffs filed an opposition on September 24, 2020.  (Dkt. No. 6.)  Defendants filed a reply on October 9, 2020.  (Dkt. No. 7.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend.

## Background

     On June 15, 2020, Plaintiffs Irma Santana and Rafael Santana, (collectively "Plaintiffs"), proceeding pro se, filed a Complaint in San Diego County Superior Court

1

against Defendant BSI Financial Services, Inc. ("BSI"),[1] and U.S. Bank Trust National Association, as Trustee of The SCIG Series III Trust ("U.S. Bank") (collectively "Defendants") alleging eighteen causes of action arising from an alleged wrongful foreclosure of their home. (Dkt. No. 1-2, Compl.) The Complaint was removed to this Court on August 14, 2020. (Dkt. No. 1, Not. of Removal.)

According to the Complaint, Plaintiffs were the owners of residential real property located at 8489 Adams Street, Lemon Grove, CA. (Dkt. No. 1-2, Compl. ¶ 8.) In February 2006, Plaintiffs obtained a loan in the amount of $375,000 secured by a deed of trust on the property that was recorded on February 13, 2006. (*Id.* ¶ 10(a); *id.*, Ex. A.)

Around April 16, 2019, Briana Young, an authorized representative, executed a notice of default ("NOD") which was recorded on April 17, 2019. (*Id.* ¶ 10(b); *id.*, Ex. B.) Around July 19, 2019, Briana Young executed a Notice of Trustee's Sale ("NTS") which was recorded on July 22, 2019. (*Id.* ¶ 10(c); *id.*, Ex. C.) Around April 8, 2020, Michele Ghidoti, an authorized representative, executed a Trustee's Deed Upon Sale ("TDUS"), indicating that the property was sold at an auction on March 30, 2020 to Defendant U.S. Bank and the TDUS was recorded on April 10, 2020. (*Id.* ¶ 10(d); *id.*, Ex. D.)

Plaintiffs allege that they applied for a loan modification in early January 2020. (*Id.* ¶¶ 11(a); 11(d).) They never received written confirmation that the application was received or denied. (*Id.* ¶¶ 11(a); 11(d).) Several times during mid-January and the end of February, Plaintiffs called and emailed Defendant BSI's Financial Services Loss Mitigation Specialist and designated single point of contact ("SPOC") Patty Vera ("Vera"), to get a status update but was never able to reach her. (*Id.* ¶¶ 11(a); 11(b); 11(d).) In late February, Vera finally responded to Plaintiffs' calls and told them to write a letter appealing the loan modification denial. (*Id.* ¶¶ 11(a); 11(d).) She informed them

---

[1] Servis One, Inc. dba BSI Financial Services states it has been erroneously as BSI Financial Services, Inc.

they had twenty days to provide additional income and a letter stating when Irma Santana would start working again along with her expected income.  (*Id.* ¶¶ 11(a); 11(d).)  Vera stated this would be sufficient to reverse the denial.  (*Id.* ¶ 11(d).)  Despite never having received any written confirmation of a denial of the loan modification application, within the 20-day period, in late February or early March, Plaintiffs submitted the required information but again did not receive an answer in writing.  (*Id.* ¶ 11(a).)  Irma Santana found a job that she was supposed to start on March 15, 2020; however due to COVID-19, she was unable to start work on that day.  (*Id.* ¶ 11(d).)

Plaintiffs again called Vera several times with no responses between late February and early March and when they finally reached her in mid-March, Vera suggested they submit a new loan modification application showing more income but were never told their prior loan modification application was denied.  (*Id.* ¶¶ 11(a), (d).)  On the advice of Vera, on March 25, 2020, Plaintiffs submitted a full loan modification application with the additional information.  (*Id.* ¶¶ 11(a); 11(d).)  Plaintiffs then reached out to Vera daily after submitting the application leaving several voicemails, but were unable to reach her and finally reached a different BSI representative on March 29, 2020 who told them that the application had been denied and BSI was going to go forward with the foreclosure.  (*Id.* ¶¶ 11(a); 11(d).)  Plaintiffs never received a written notice of the denial and the sale took place the next day on March 30, 2020.  (*Id.* ¶¶ 11(a); 11(d).)  Plaintiffs allege the foreclosure sale was in violation of HBOR; therefore, the trustee sale was invalid.  (*Id.* ¶¶ 11(d); 12.)

Plaintiffs claim they were provided with two SPOCs who were not responsive.  (*Id.* ¶ 11(b).)  Irma Gutierrez was assigned in December 2019 and Patty Vera was assigned on January 15, 2020.  (*Id.*)

On September 4, 2016, Plaintiffs filed for Chapter 13 Bankruptcy.  At that time, Wells Fargo was the servicer of the loan and at the end of 2016, Rushmore Lending replaced Wells Fargo as the loan servicer.  (*Id.* ¶ 11(d).  In August 2018, during the second year of the bankruptcy, the loan was sold to Defendant BSI.  (*Id.*)  Before BSI,

there was no noted late payments on the mortgage.  (*Id.*)  Despite that, BSI filed a motion for relief from the automatic stay in the Bankruptcy Court and provided conflicting numbers and accounting of payments while Plaintiffs provided evidence that there was only one missing payment from September 2018.  (*Id.*)  These court proceedings caused additional expenses and financial hardship on Plaintiffs especially since Irma Santana had recently lost her job.  (*Id.*)  In January 2019, when Plaintiffs did not have any further funds to continue with the bankruptcy litigation, they had no option but to concede with Defendants' false and fraudulent calculations in order to save the property.  (*Id.*)  Since they had borrowed money and used all their savings during the litigation, Plaintiffs were unable to comply with their financial obligations and make extra payments.  (*Id.*)  The Bankruptcy Trustee dismissed the case on February 2, 2019.  (*Id.*)  Plaintiffs were able to refile in August 2019 but the payments were too high and Irma Santana had not yet found employment.  (*Id.*)  Therefore, their last option was to submit a loan modification request in January 2020.  (*Id.*)  However, Plaintiffs never received a letter stating that their loan modification application was complete and never received a written denial.  (*Id.*)

In the motion, Defendants[2] move to dismiss seventeen causes of action for failure to state a claim which is fully briefed.[3]  (Dkt. Nos. 3, 6, 7.)

/ / /

/ / /

/ / /

---

[2] BSI, as the loan servicer, and U.S. Bank, as the third-party purchaser at the TDUS, are distinct entities with different involvement in the case.  However, Defendants move together to dismiss all causes of action against them without distinguishing the alleged role or liability of each Defendant.

[3] Defendants did not move to dismiss the tenth cause of action for declaratory relief which Plaintiffs note in their opposition.  (Dkt. No. 6 at 25.)  In reply, Defendants argue that the declaratory relief necessarily fails because it is a remedy and because Plaintiffs move failed to allege any cause of action, the tenth claim fails.  (Dkt. No. 7 at 5-6.)  The Court declines to consider any new arguments raised in the reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Moreover, because the Court denies the motion to dismiss on certain claims, Defendants' argument is without merit.

# Discussion

## A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*

*Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**B.   Defendants' Request for Judicial Notice**

Defendants filed a request for judicial notice of documents recorded with the San Diego County Recorder's Office, the Bankruptcy Court docket for *In re Rafael Avelar-Santana*, Case No. 16-04825-LT13 as well as numerous pleadings from that case; the Bankruptcy Court docket for *In re Rafael Avelar-Santana,* Case No. 19-04965-LT13 filed on August 21, 2019 and the order dismissing that case; and the Bankruptcy Court docket for *In Re Rafael Avelar-Santana,* Case No. 19-07655-LT13 filed on December 26, 2019 and the order dismissing that case.[4]  (Dkt. No. 3-1.)  No opposition has been filed.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, two exceptions exist where a district court may consider "material which is properly submitted as part of the complaint" or if the documents are not attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them.  *Id.* (citations omitted).  In addition, a court may take judicial notice of "matters of public record" under Federal Rule of Evidence 201.  *Id.* at 688-89.

Under the Federal Rules of Evidence, the Court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

---

[4] In their motion, Defendants argue that Plaintiffs are barred from re-litigating the post-petition arrears based on judicial estoppel and res judicata.  (Dkt. No. 3 at 10.)  Plaintiffs respond that the claims in this Complaint are not the same claims that were raised in the bankruptcy case.  (Dkt. No. 6. at 12.)  The Court agrees with Plaintiffs that the amount of post-petition arrears is not at issue in this case.  The gravamen of the Complaint alleges Defendants' violations of HBOR, particularly engaging in dual tracking which is barred by HBOR.  Because the protections of HBOR are triggered once Plaintiffs are in default, the amount of arrears is not relevant in the motion to dismiss.

whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Hence, "as a general rule, a district court . . . may take judicial notice of matters of public record and may consider them without converting a Rule 12 motion into one for summary judgment."  *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008).

The court may take judicial notice of filings with the County Recorder's Office as they are "matters of public record."  *See Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of a deed of trust, assignment of deed of trust, notice of default, substitution of trustee, rescission of notice of default and election to sell under deed of trust); *Fimbres v. Chapel Mortg. Corp.*, No. 09-CV-0886-IEG, 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record).  In addition, the court may also take judicial notice of filings in other courts.  *See Reyna Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue."); *Cave Man Kitchens Inc. v. Caveman Foods, LLC*, No. 2:18-cv-01274 RAJ, 2019 WL 3891327, at *2 (W.D. Wash. Aug. 19, 2019) ("It is well established that the Court may take judicial notice of court filings, including bankruptcy court filings."); *Otter v. Northland Grp., Inc., No*. 12-2034-RSM, 2013 WL 2243874, at *1 (W.D. Wash. May 21, 2013) (granting request for judicial notice of documents filed in bankruptcy court).  Because the documents recorded with the San Diego Recorder's Office and court filings in the Bankruptcy cases are judicially noticeable, the Court GRANTS Defendants' request for judicial notice.

## C.   Lack of Standing

As a threshold argument, Defendants summarily contend that Plaintiffs' lack standing on all causes of action for the failure to tender the full amount of the loan due;

therefore, all claims should be dismissed.  (Dkt. No. 3 at 11.[5])  Plaintiffs respond that their claims are exempt from the tender rule.  (Dkt. No. 6 at 13-15.)

In general, under California law, "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."  *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App .3d 575, 578 (1984); *see also Karlsen v. Am. Sav. & Loan Assn*., 15 Cal. App. 3d 112, 117 (1971) ("[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust").  "A plaintiff must (1) demonstrate a willingness to pay and (2) show the ability to pay."  *Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009) (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)).

"The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure."  *Green v. Central Mortg. Co.,* 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015) (citing *Arnolds Mgmt. Corp.,* 158 Cal. App. 3d at 578-79)  The tender rule "is rooted in equity and premised on the notion that it would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."  *Alvarez v. Wells Fargo Bank, N.A*., No. 12–9661, 2013 WL 425097, at *4 (C.D. Cal. Jan. 31, 2013) (internal quotation marks and citation omitted).  California caselaw recognizes four exceptions to the tender rule:

> First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.

> Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. In such cases, it is deemed that the tender and the counter claim offset one

---

[5] Page numbers are based on the CM/ECF pagination.

another, and if the offset is equal to or greater than the amount due, a tender is not required.

Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale.

Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112–13 (2011) (internal citations omitted). A plaintiff may be excused from the tender rule if allegations support an exception to the tender rule.  *See Sciarratta v. US. Bank Nat'l Ass'n*, 247 Cal. App. 4th 552, 568 (2016) (if the plaintiff properly alleges the foreclosure is void, tender is not required in causes of action for wrongful foreclosure, cancellation of instruments and quiet title); *Azam v. Wells Fargo Bank, N.A*., 677 Fed. App'x 326, 327 (9th Cir. 2017) ("A full tender may not be required where one or more of four recognized exceptions applies."); *Pantoja,* 640 F. Supp. 2d at 1184 (courts have discretion to excuse the tender requirement where its application would be inequitable).

"Because tender is an equitable concept, courts have held that '[w]hether Plaintiffs are required to tender is a matter of discretion left up to the Court,' and that 'failure to allege tender is not decisive at [the pleading] stage.'"  *Bingham v. Ocwen Loan Serv., LLC*, No.: 13-CV-4040–LHK, 2014 WL 1494005, at *7–8 (N.D. Cal. Apr. 16, 2014) (quoting *Storm v. Am.'s Servicing Co*., No. 09cv1206–IEG (JMA), 2009 WL 3756629, at *6 (S.D. Cal. Nov. 6, 2009)); *Stokes v. CitiMortgage, Inc*., No. CV 14–00278 BRO (SHx), 2014 WL 4359193, at *8-9 (C.D. Cal. Sept. 3, 2014) (exercising discretion to decline to apply tender at pleadings stage until further factual development to enable "the Court to assess the equities involved in determining whether the tender rule should apply.").  However, the tender rule does not apply to violations of the California Homeowner Bill of Rights ("HBOR").  *Valbuena v. Ocwen Loan Serv., LLC*, 237 Cal. App. 4th 1267, 1273-74 (2015) ("Nothing in the language of HBOR suggests that a

borrower must tender the loan balance before filing suit based on a violation of the requirements of the law.").

Here, Plaintiffs allege both equitable and non-equitable claims, some of which challenge the foreclosure process and some of which challenge the loan modification process.  Defendants conclusorily argue that all claims in the complaint should be dismissed for failure to tender but provides no legal analysis as to how the tender rule applies to each claim and does not address Plaintiffs' assertion that an exception to the tender rule applies.  Accordingly, the Court DENIES Defendants' motion to dismiss all claims for failing to tender as legally unsupported.  *See Green v. Central Mortg. Co*., 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015) (denying dismissal on summary tender arguments because defendants "never attempt to explain how or why the tender rule applies to each claim; they just say that the entire Second Amended Complaint is barred.").

**D.   First, Second, Third and Fourth Causes of Action – Violations of California Homeowner Bill of Rights ("HBOR")**

Plaintiffs allege violations of four provisions of the HBOR: California Civil Code sections 2923.5 or 2923.55; 2923.6; 2923.7; and 2923.17.  (Dkt. No. 1-2, Compl. ¶¶ 16-40.)

The California Homeowner Bill of Rights ("HBOR"), which became effective on January 1, 2013, "reformed aspects of the state's nonjudicial foreclosure process by amending the California Civil Code to prohibit deceptive and abusive home foreclosure practices."  *Bingham*, 2014 WL 1494005, at *3.  The purpose of the HBOR is to ensure that specified borrowers who may qualify for a foreclosure alternative are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4.

1      ## 1.      First Cause of Action - Section 2923.5 or 2923.55[6]

2           Pursuant to section 2923.55(b)(1), prior to recording a NOD, a mortgage servicer

3      must provide a statement that the borrower may request a copy of the promissory note,

4      deed of trust, copy of any assignment, if applicable and a copy of the borrower's payment

5      history.  Cal. Civ. Code § 2923.55(b)(1).  In addition, before a mortgage servicer records

6      a Notice of Default, it must contact the borrower "in order to assess the borrower's

7      financial situation and explore options for the borrower to avoid foreclosure." *Id.* §

8      2923.55(b)(2).  Any recorded NOD must include a declaration stating that these

9      requirements have been fulfilled.  *Id.* § 2923.55(c).

10          In their motion, Defendants argue they complied with section 2923.55 citing to the

11     Notice of Default, (Dkt. No. 1-2, Compl., Ex. B. at 75), which declares that Plaintiffs

12     were contacted pursuant to section 2923.55(b)(2).  (Dkt. No. 3 at 11.)  In addition, as to a

13     violation of 2923.55(b)(1), they contend that the loan documents were readily available to

14     them in the bankruptcy filings; thus, any alleged violation would not be material.  (*Id.*)

15     Plaintiffs respond that there is a disputed issue of fact of whether section 2923.55(b)(2)

16     and (c) were complied with and such a determination is not proper on a motion to

17     dismiss.  (Dkt. No. 6 at 16.)  They further dispute Defendants' argument, that the

18     numerous communications between Plaintiffs and BSI in early 2020 were sufficient to

19     demonstrate compliance with HBOR, as misleading.  (*Id.*)

20          To state a claim under section 2923.55, a plaintiff must allege that the required

21     contact "either did not occur or was deficient."  *Gayman v. Wells Fargo Bank, N.A.*, Case

22     No. CV 16-9203 DMG (PJWx), 2017 WL 8131989, at *4 (C.D. Cal. Feb. 10, 2017)

23     (quoting *Pantoja v. Countrywide Home Loans,* Inc., 640 F. Supp. 2d 1177, 1186 (N.D.

24     _____

25     [6] Application of sections 2923.5 and 2923.55 depends on the entity's number of foreclosures in a

26     reporting period.  *See* Cal. Civ. Code §§ 2923.5(g); 2923.55(g).  Section 2923.5 applies to entities with
       more than 175 foreclosures in a reporting period while section 2923.55 applies to entities that had fewer

27     than 175 foreclosures in a reporting period.  *See* Cal. Civ. Code § 2924.18(c).  In this case, Plaintiffs rely
       on the language in section 2923.55 and the NOD's declaration was filed pursuant to section 2923.55;

28     therefore, the Court addresses the claim under section 2923.55.  (Dkt. No. 1-2, Compl., Ex. B at 75.)

Cal. 2009)).  Here, the Complaint alleges two violations.  First, Plaintiffs never received a statement advising they could request a copy of their DOT or mortgage, a copy of any assignment and a copy of the borrower's payment history.  (Dkt. No. 1-2, Compl. ¶ 18(a).)  Second, the Complaint claims Defendants never contacted Plaintiffs prior to the recording of the NOD.  (*Id.* ¶ 18(b).)  These allegations support a claim under section 2923.55.  *See Gayman*, 2017 WL 8131989, at *4.

Defendants' reliance on the section 2923.55 declaration filed with the NOD is misplaced.  On a motion to dismiss, the Court does not resolve issues of fact but looks at whether the complaint alleges facts to state a plausible claim.  *See Iqbal*, 556 U.S. at 678. Moreover, while the Court takes judicial notice of the NOD, the Court may not consider the truth of what is asserted in the NOD.  *See Lee*, 250 F.3d at 690 (judicial notice of public records is limited to the existence of the documents, not the truth of the matters stated in them); *Mottale v. Kimball Tirey & St. John, LLP*, No. 13CV1160 GPC-MMA, 2014 WL 109354, at *3 (S.D. Cal. Jan. 10, 2014) ("In taking judicial notice of documents pursuant to Rule 201(b), the court may take notice of the existence of the documents but not the truth of the matters asserted therein."); *accord Intengan v. BAC Home Loans Serv. LP*, 214 Cal. App. 4th 1047, 1057 (2013) (taking judicial notice of section 2923.5 declaration proper to show existence of the declaration but could not be taken to demonstrate compliance with section 2923.5).  Therefore, Defendants' argument that they complied with section 2923.55 by filing the NOD is without persuasion at this stage of the proceeding.

As a final argument, Defendants summarily contend that the Complaint concedes that there were numerous communications with BSI about the loan modification review which were denied each time but do not articulate how these communications complied with section 2923.55.  (Dkt. No. 3 at 12.)  Section 2923.55 requires the loan servicer to contact the borrower prior to recording the NOD, which in this case was April 17, 2019, (Dkt. No. 1-2, Compl. ¶ 10(c)).  The communications in the Complaint are ones that

occurred after the NOD was filed.  It does not appear that the communications referenced by Defendants are relevant to this cause of action.

Therefore, the Court concludes that the Complaint alleges violations of section 2923.55 and DENIES the motion to dismiss.  *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 977 (N.D. Cal. 2012) ("When a plaintiff's allegations dispute the validity of defendant's declaration of compliance in a Notice of Default . . . the plaintiff has 'plead[ed] enough facts to state a claim to relief that is plausible on its face." (internal quotation marks omitted)); *see also Intengan v. BAC Home Loans Serv. LP*, 214 Cal. App. 4th 1047, 1057 (2013) (plaintiff stated a cause of action for violation of section 2923.5 when she alleged she was never contacted by defendants and that they never exercised due diligence in attempting to contact her in contradiction with defendants' declaration of compliance).

### 2.  Fourth Cause of Action - Section 2924.17

Section 2924.17 requires both that the declaration filed with the NOD under section 2923.55 "be accurate and complete and supported by competent and reliable evidence;" and also that before recording or filing, the mortgage servicer must "ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose."  Cal. Civ. Code §§ 2924.17(a)-(b).

Defendants maintain that the claim that they failed to properly verify Plaintiffs' default when they recorded the NOD and conducted a foreclosure sale is without merit because HBOR only requires that the declaration be filed with the NOD and does not require that they prove anything in court other than the fact that the declaration was filed and that necessary steps were taken before filing citing to *Lucioni v. Bank of America, N.A.*, 3 Cal. App. 5th 150, 163-64 (2016).  (Dkt. No. 3 at 13.)  Plaintiffs disagree.  (Dkt. No. 6 at 16.)

As an initial matter, Defendants' reliance on *Lucioni v. Bank of America, NA*, 3 Cal. App. 5th 150, 163-64 (2016) is misplaced as that ruling was specific to a pre-foreclosure case seeking injunctive relief where the court of appeal explained "[s]ections

2924.17 and 2923.55 do not create a right to litigate, pre-foreclosure, whether the foreclosing party's conclusion that it had the right to foreclose was correct." *Lucioni*, 3 Cal. App. 5th at 163.  However, the court explained that HBOR may allow the borrower to bring a "post foreclosure cause of action for damages." *Id.* at 161.  This case involves a foreclosure that has already occurred and claims for damages may be brought under HBOR.  *See id.*

Plaintiffs alleges that Defendants violated section 2924.17 by not properly reviewing their loan information and verifying whether Defendants had the right to foreclose based on competent and reliable evidence.  (Dkt. No. 1-2, Compl. ¶ 37.) Instead, Defendants executed and recorded a fraudulent declaration with the NOD under section 2923.55 and unlawfully forced Plaintiffs into the foreclosure process when Plaintiff were in the midst of review for a loss mitigation alternative and did not provide a written denial of their loan modification application and an opportunity to appeal prior to proceeding with the invalid trustee sale.  (*Id.*)  These alleged facts state a claim for violations of section 2924.17, and the Court DENIES Defendants' motion to dismiss this claim.  *See Gayman*, 2017 WL 8131989, at *5 (allegation that defendant attached a false declaration to the Notice of Default under 2923.55 is also the basis of the section 2924.17 and states a claim).

### 3.    Second Cause of Action - Section 2923.6

Section 2923.6 prohibits "dual tracking," in which a lender proceeds with the foreclosure process while reviewing a loan modification application.  Cal. Civ. Code § 2923.6(c).  "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer . . . shall not record a notice of default, or conduct a trustee's sale, while the complete first lien loan modification application is pending."  *Id.*  Section 2923.6(d) further provides that the "borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."  *Id.* § 2923.6(d).  Finally, section 2923.6(f) requires that the

mortgage servicer send a "written notice to the borrower identifying the reasons for denial." *Id.* § 2923.6(f).

Defendants maintain that the Complaint admits that Plaintiffs' January 2020 loan modification application was reviewed and denied for insufficient income, the appeal was denied and the March 25, 2020 application was also denied. (Dkt. No. 3 at 12.) In addition, Defendants explain that Plaintiffs were granted a modification in 2012 and under section 2923.6(g), Defendants were not required to review their subsequent applications unless there was a material change in the borrower's financial circumstances that were documented and submitted to the lender. (*Id.*) Defendants also were not required to review the March 25, 2020 application because it was submitted less than 5 business days before the March 30, 2020 trustee's sale, *see* Civil Code § 2923.6(c). (*Id.*) Finally, Defendants argue that if a borrower accepts a written first lien loan modification but defaults on or breaches the borrower's obligations, then the lender may pursue foreclosure under section 2923.6(c)(3). (*Id.* at 12-13.)

Plaintiffs challenge Defendants' argument and claim that their loan modification application in January 2020 documented material changes in Plaintiffs' financial circumstances as required under section 2923.6(g); therefore, Defendants were obligated to review the January 2020 application. (Dkt. No. 6 at 17.) Next, they allege Defendants violated section 2923.6(f) by failing to provide them with written notice of denial and the reasons for the denial for the January and March 2020 applications and Vera, the single point of contact, falsely advised they would have 20 days to appeal the denial; however, section 2923.6(d) provides 30 days to appeal from written denial. (*Id.*) Because Plaintiffs never received a written denial, Defendants could not record a NOD as the 30 day period was never triggered. Finally, Plaintiffs aver that Vera improperly advised them to file another full loan modification less than 5 business days before the trustee's sale.

On its own, the Complaint alleges a violation of section 2923.6(c) where Defendants executed and recorded foreclosure documents while Plaintiffs were in the

midst of a loan modification review.  (Dkt. No. 1-2. Compl. ¶ 24; Dkt. No. 6 at 17.)
Moreover, Plaintiffs allege a violation of section 2923.6(f) requiring financial institutions
to provide borrowers with a written notice identifying the reasons for the denial, and a
violation of section 2923.6(d) because Plaintiffs claim they were not provided sufficient
30 days to appeal the denial.  (Dkt. No. 1-2. Compl. ¶ 24; Dkt. No. 6 at 17.)

However, Defendants assert and the judicially noticed documents show that
Plaintiffs were granted a loan modification in 2012 which was recorded with the County
Recorder's Office on April 9, 2012.  (Dkt. No. 3-1, Ds' RJN, Ex. 4 at 16.)  Plaintiffs do
not dispute that they were granted a loan modification in 2012 as they argue they
provided information about their changed financial circumstances in their January 2020
and March 2020 loan modification applications.  (Dkt. No. 6 at 17.)  The material fact
that Plaintiffs were granted a prior loan modification alters the analysis under section
2923.6.

Section 2923.6(g) provides that "the mortgage servicer shall not be obligated to
evaluate applications from borrowers who have been evaluated or afforded a fair
opportunity to be evaluated consistent with the requirements of this section, unless there
has been a material change in the borrower's financial circumstances since the date of the
borrower's previous application and that change is documented by the borrower and
submitted to the mortgage servicer."  Cal. Civil Code § 2923.6(g).  To seek a review
under "changed circumstances," Plaintiffs must allege a specific change in financial
situation.  *See Gilmore v. Wells Fargo Bank N.A*., 75 F. Supp. 3d 1255, 1264-65 (N.D.
Cal. 2014).

Here, while Plaintiffs, in their opposition, contend they informed Defendants of
their "changed circumstances" when they submitted their loan modification application in
January and March 2020; it is not alleged in the Complaint.  Accordingly, the Court
DISMISSES the section 2923.6 claim with leave to amend to sufficiently plead that
section 2923.6(g) allows review of Plaintiffs' loan modifications by Defendants.

20cv1577-GPC(WVG)

Defendants' final argument claims that Plaintiffs are not entitled to the HBOR protections because of their prior default on the 2012 loan modification.  (Dkt. No. 3 at 12.)  Section 2923.6(c)(3) provides,

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> . . .
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code § 2923.6(c)(3).

In the unpublished opinion of *Deschaine v. IndyMac Mortg. Servs*, 617 Fed. App'x 690, 693-94 (9th Cir. 2015), the Ninth Circuit held that because the borrower defaulted under the original loan agreement and a prior loan modification agreement, he was not entitled to HBOR protections.  *Id.* at 694; *see also Smith v. Wells Fargo Bank, N.A.,* No. 15–CV–01779–YGR, 2016 WL 283521, at * 3 (N.D. Cal. Jan. 25, 2016) ("under section 2923.6(c)(3), a borrower who already obtained and defaulted on a first lien loan modification is not entitled to the protections against recording of notices and conducting a trustee's sale during the pendency of a later loan modification application.").  However, the district court in *Shaw v. Specialized Loan Serv., LLC*, 14-00783 MMM (MRWx), 2014 WL 12569530, at *6 (C.D. Cal. July 3, 2014), which was decided before *Deschaine*, relied on the forward looking plain language of section 2923.6 and concluded that "§ 2923.6(c)(3) applies only to a default on a pending, not a prior, loan modification application." *Id.*  The Court declines to rule on this issue as neither party has sufficiently analyzed section 2923.6(c)(3) and how it relates with section 2923.6(g).  Moreover,

because the Court grants Plaintiffs leave to amend the complaint, the issue may be raised at a later time.  Accordingly, the Court GRANTS Defendants' motion to dismiss the section 2923.6 claim.

### 4.    Third Cause of Action - Section 2923.7

Section 2923.7 provides that "[w]hen a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a).  California enacted section 2923.7 as part of its attempt "to eliminate the practice of dual tracking and to ameliorate its effects, by requiring lenders and loan servicers to designate a 'single point of contact' for each borrower in default." *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 943–44 (N.D. Cal. 2015) (quoting *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904 (2013)).  Section 2923.7 's single point of contact provision "is intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley,* 213 Cal. App. 4th at 904-05.  A SPOC "means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive.  The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." *Id.* § 2923.7(e).  One of the SPOC's responsibilities include "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."  Cal. Civ. Code § 2923.7(b)(3).[7]

---

[7] Responsibilities of the SPOC include the following:
> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

Defendants move to dismiss the section 2923.7 violation arguing that the Complaint concedes that there were numerous communications with the SPOC and that they were informed that their applications were reviewed and denied.  (Dkt. No. 3 at 13.)  Plaintiffs oppose arguing they sufficiently alleged violations of section 2923.7 arguing they were never provided with a SPOC that was responsive, available and knowledgeable about their applications; in fact, they were given two different SPOC during the loan modification process.  (Dkt. No. 6 at 18-19.)  Further, Vera, the SPOC, provided incorrect information by telling Plaintiffs to file another loan modification application on March 25, 2020 even though she knew or should have known the sale was scheduled on March 30, 2020.  (*Id.*)

Plaintiffs were assigned a SPOC; however, the SPOC assigned did not comply with her responsibilities under section 2923.7(b)(3).  The Complaint claims that Plaintiffs were forced to communicate with numerous different individuals who provided them with conflicting information, failed to take countermeasures to prevent Plaintiffs from being subjected to the foreclosure process and they were generally not capable of reasonably performing their duties as agent for the lender.  (Dkt. No. 1-2, Compl. ¶ 31.)  Plaintiffs claim that the "team" of contacts were not knowledgeable about Plaintiffs' loss mitigation application and specific circumstances in violation of the section 2923.7.  (*Id.*)  Plaintiffs were repeatedly told to resubmit their applications again and again even though the March application was barred under section 2923.6.  (*Id.*)  While Plaintiffs

_____

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.
Cal. Civ. Code § 2923.7(b)(1)-(5).

acknowledge they were provided a SPOC, the SPOC provided was not in compliance with section 2923.7 as she failed to fulfill her statutory responsibilities.  Accordingly, the Court DENIES Defendants' motion to dismiss.  *See Green,* 148 F. Supp. 3d at 875 (denying motion to dismiss § 2923.7 claim given plaintiff's allegations that the defendant's "representatives gave her conflicting information" even while acknowledging that they received, processed, and denied two loan modification applications); *Nasseri,* 147 F. Supp. 3d at 945 (denying motion to dismiss violation of section 2923.7(b)(1) based on the allegations that SPOC provided incorrect information regarding what foreclosure prevention alternatives were available).

**E.    Fifth Claim for Breach of Contract and Sixth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege that Defendants breached paragraph 22 of the DOT which provides that if the borrower breaches the agreement, the Lender must give notice to the borrower of the default, the action required to cure the default, a date by which the default must be cured and that failure to cure the default may result in acceleration of the loan.  (Dkt. No. 1-2, Compl., Ex. A, DOT at 66-67.)  Paragraph 22 also requires the Lender to inform the borrower of the right to reinstate after acceleration and the right to bring a court action.  (*Id.*)

Defendants argue that the breach of contract claim fails because Plaintiffs have defaulted on the loan, have no excuse for non-performance and as a result, Plaintiffs have not sustained any damages from an alleged failure to notify them that they could bring a court action.  Similarly, Defendants contend that the claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs defaulted on the loan and cannot show that Defendants interfered with Plaintiffs' contractual rights or that they were harmed.  (Dkt. No. 3 at 14-15.)  Plaintiffs respond that they did not receive any notice that complied with paragraph 22 of the DOT; therefore, their claims survive.  (Dkt. No. 6 at 20-21.)

Under California law, the elements required for a cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015) (quoting *Levy v. JP Morgan Chase*, No. 10–01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010)). The covenant of good faith and fair dealing, implied by California law in every contract, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance. *Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 349 (2000).

The Complaint alleges that Defendants breached paragraph 22 of the DOT by failing to provide Plaintiffs with notice that the loan was in default before it accelerated the loan and proceeded with foreclosure and Defendants failed to provide them notice of their right to bring a lawsuit to allege defenses to the acceleration and sale. (Dkt. No. 1-2, Compl. ¶¶ 44, 46.) It further asserts that Defendants interfered with Plaintiffs' right to receive the benefits of the DOT by violating numerous provisions of the HBOR. (*Id.* ¶ 53.) Plaintiffs further allege that they were harmed from Defendants' failure to comply with paragraph 22 by the loss of their home. (*Id.* ¶ 38.) As the Complaint points out, Defendants' obligation under paragraph 22 of the DOT arises upon Plaintiffs' default; therefore, Defendants' argument that the causes of action fail because Defendants were in default is not persuasive. (Dkt. No. 1-2, Compl. ¶ 47.) Accordingly, the Complaint sufficiently alleges a claim for breach of contract as well as breach of the implied covenant of good faith and fair dealing and the Court DENIES Defendants' motion to dismiss on these two claims.

**F.       Seventh Cause of Action - Negligence**

Defendants assert that they owe no duty of care to Plaintiffs relating to their review of the loan modification application and the subsequent foreclosure of the property.  (Dkt. No. 3 at 15-16.)  Even if there were a duty, because Plaintiffs defaulted on their 2012 loan modification, they were not entitled to subsequent loan modification reviews.  Finally, because the Complaint and the bankruptcy filings admit that Plaintiffs were in default on the loan, causation and resulting damages are lacking.  (*Id.*)  Plaintiffs respond that Defendants owed them a duty of care when considering the loan modification, they breached their duty by violating provisions of the HBOR, and these breaches proximately caused them damages.  (Dkt. No. 6 at 22-23.)

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries."  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).  The "general rule" is that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn*., 231 Cal. App. 3d 1089, 1096 (1991). However, "California Courts of Appeal . . . are divided on the question of whether accepting documents for a loan modification is within the scope of a lender's conventional role as a mere lender of money, or whether, and under what circumstances, it can give rise to a duty of care with respect to the processing of the loan modification application"  *Rossetta v. CitiMortgage, Inc.,* 18 Cal. App. 5th 628, 637-38 (2017) (*comparing Lueras*, 221 Cal. App. 4th at 67 (residential loan modification is a traditional lending activity, which does not give rise to a duty of care) *with Alvarez v. BAC Home Loans Serv., L.P.,* 228 Cal. App. 4th 941, 948 (2014) (servicer has no general duty to offer a loan modification, but a duty may arise when the servicer agrees to consider the borrower's loan modification application)).  In *Rossetta*, the court of appeal recognized that California courts of appeal as well as federal district courts are divided on this issue.

*Id.* at 638.   In fact, while the Ninth Circuit has signaled that it may view the "no duty" line of cases as more persuasive, it has declined to certify the question to the California Supreme Court.  *Id.* at 639 (citing *Anderson v. Deutsche Bank Nat'l Trust Co. Ams.*, 649 Fed. App'x 550, 552 n.1 (9th Cir. 2016) (loan servicer has no common law duty to approve application within a particular time frame)).

Recently, in *Foyer v. Wells Fargo Bank, N.A.*, Case No.: 3:20-CV-00591-GPC-AHG, 2020 WL 3893031, at *15 (S.D. Cal. July 10, 2020), this Court, on a motion to dismiss a negligence claim based on the defendant's alleged mishandling of a loan modification application, noted that the Supreme Court of California recently granted a petition for review of *Sheen v. Wells Fargo Bank, N.A.*, 38 Cal. App. 5th 346, 358 (2019), where the court of appeal followed *Lueras,* not *Alvarez* concluding that the trial court properly dismissed the negligence count "because a lender does not owe a borrower a common law duty to offer, consider, or approve a loan modification." *See Sheen v. Wells Fargo Bank*, 451 P.3d 777 (Cal. 2019).  In *Foyer,* the Court declined to rule on the duty of care issue while the *Sheen* case was pending concluding that discovery would not likely be meaningfully different with or without the negligence claim.  *Foyer*, 2020 WL 3893031, at *15.  Accordingly, in line with the Court's decision in *Foyer*, the Court also declines to rule on this issue while the *Sheen* case is pending with the California Supreme Court and DENIES Defendants' motion to dismiss at this time.  On the issue of damages and causation, Defendants raise factual issues not proper on a motion to dismiss and declines to address their summary argument that causation and damages are lacking due to the fact that Plaintiffs were in default.

**G.     Eighth Cause of Action – Fraudulent Misrepresentation; Ninth Cause of Action – Negligent Misrepresentation; Seventeenth Cause of Action – Fraudulent Concealment**

Defendants argue that the eighth, ninth and seventeenth causes of action fail to state a claim because no misrepresentation of fact is alleged and the loan applications were in fact reviewed and denied.  (Dkt. No. 3 at 16.)  Further, Defendants argue that

Plaintiffs fail to provide the specificity as to each Defendant as required under Rule 9(b). In response, Plaintiffs argue that Patty Vera, the SPOC, informed them that they needed to show more income by providing a letter stating Irma Santana would return to work which they provided in early March 2010, and that would be sufficient to reverse the denial.  (Dkt. No. 6 at 24.)

"The elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage."  *Daniels v. Select Portfolio Serv., Inc.*, 246 Cal. App. 4th 1150, 1166 (2016).  "The elements of a claim for negligent misrepresentation are nearly identical.  Only the second element is different, requiring the absence of reasonable grounds for believing the misrepresentation to be true instead of knowledge of its falsity."  *Id.*  Finally, the elements of fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact."  *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015).

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Odom v. Microsoft Corp.,* 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). Where there are multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'"  *Vegas v.*

*JPMorgan Chase Bank, N.A.,* 654 F. Supp. 2d 1104, 1115 (E.D. Cal. 2009) (quoting *Pegasus Holdings v. Veterinary Ctrs. of America, Inc*., 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998)).  A plaintiff cannot lump multiple defendants but must state the allegations as to each defendant separately concerning that defendant's alleged participation in the fraud.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotation omitted).  In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co*., 2 Cal. App. 4th 153, 157 (1991).

Here, the Complaint does not allege Defendants made misrepresentations of fact or fraudulently concealed a material fact but instead claim that Defendants' failed to comply with numerous provisions of HBOR by failing to properly review Plaintiffs' loan modification application, failing to provide a written denial and an opportunity to appeal, unlawfully proceeding with a trustee's sale a day after Plaintiffs were telephonically informed of the denial, and filing a fraudulent NOD declaration.  (Dkt. No. 1-2, Compl. ¶¶ 65, 73, 129.)  Therefore, they fail to assert a claim for fraudulent misrepresentation, negligent misrepresentation and fraudulent concealment.  In addition, for purposes of Rule 9(b) pleading, Defendants are lumped together and Plaintiffs do not separate out which Defendant is responsible for which alleged statement.  Accordingly, the Court GRANTS Defendants' motion to dismiss the eighth, ninth and seventeenth causes of action.

## H.   Eleventh Cause of Action - Wrongful Foreclosure

Defendants argue that because the wrongful foreclosure claim is based on HBOR violations that fail to state a claim, the claim necessarily fails.  (Dkt. No. 3 at 17.)  They also summarily argue that Plaintiffs suffered no prejudice or harm and failed to tender the amounts due.  (*Id*. at 17-18.)  Plaintiffs respond that they stated a wrongful foreclosure claim based on dual tracking and HBOR violations and are not alleging procedural

irregularities but contend that the sale should never have occurred.  (Dkt. No. 6 at 26.)
Therefore, tender is not required.

   Wrongful foreclosure is a California common law claim that generally tracks the
elements of an equitable cause of action to set aside a foreclosure sale.  *Haynish v. Bank
of Am., N.A.,* 284 F. Supp. 3d 1037, 1049 (N.D. Cal. 2018) (quoting *Miles v. Deutsche
Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 408 (2015)).  The elements of a wrongful
foreclosure cause of action are: "(1) the trustee or mortgagee caused an illegal,
fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a
mortgage or deed of trust; (2) the party attacking the sale (usually but not always the
trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or
mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the
secured indebtedness or was excused from tendering."  *Sciarratta v. U.S. Bank Nat'l
Ass'n*, 247 Cal. App. 4th 552, 561-62 (2016) (quoting *Miles v. Deutsche Bank Nat'l Trust
Co.*, 236 Cal. App. 4th 394, 408 (2015)); *see also Lona v. Citibank, N.A.,* 202 Cal. App.
4th 89, 103 (2011) ("After a nonjudicial foreclosure sale has been completed, the
traditional method by which the sale is challenged is a suit in equity to set aside the
trustee's sale.").

   Because the Court concludes that Plaintiffs have alleged claims under certain
provision of HBOR, Defendants' argument fails and the Court concludes that the
Complaint alleges a claim for wrongful foreclosure based on the alleged violations of
HBOR.  (Dkt. No. 1-2, Compl. ¶ 88.)  Plaintiffs allege they have been prejudiced by the
loss of their home.  (*Id.* ¶¶ 90, 91.)  As to tender, Plaintiffs have alleged several
exceptions to the tender requirements in the Complaint which Defendants fail to
challenge.  (Dkt. No. 1-2, Compl. ¶ 13.)  One court held that on a violation of section
2923.5, tender is not required because "[t]he whole point of section 2923.5 is to create a
new, even if limited right, to be contacted about the possibility of alternatives to full
payment of arrearages.  It would be contradictory to thwart the very operation of the
statute if enforcement were predicated on full tender."  *Mabry v. Superior Ct.*, 185 Cal.

App. 4th 208, 225 (2010).  Accordingly, the Court DENIES Defendants' motion to dismiss the wrongful foreclosure claim.

**I.      Twelfth Cause of Action - Quiet Title**

Defendants assert that Plaintiffs have failed to allege the required elements and as a matter a law, a quiet title claim cannot be brought once the property has been sold.  (Dkt. No. 3 at 18.)   Plaintiffs oppose.  (Dkt. No. 27.)

An action to quiet title can be brought "to establish title against adverse claims to real or personal property or any interest therein."  Cal. Civ. Proc. Code § 760.020.  A "[c]laim" is defined as "a legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  *Id.* § 760.010(a).  To state a cause of action for quiet title, a plaintiff must allege (1) the property's legal description and its street address or common designation; (2) the plaintiffs' title and the basis of the title; (3) the "adverse claims to the title against which a determination is sought"; (4) the "date the determination is sought"; and (5) a prayer for the determination of the plaintiffs' title against the adverse claims. Cal. Civ. Proc. Code § 761.020.  In addition, a "plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009) (quoting *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984)).

Once the property has been sold in a foreclosure sale, quiet title is not a viable claim to undo the foreclosure because "claim to title has already been extinguished" and there is no adverse claim to the property.  *See Aldana v. Bank of America, N.A.*, Case No. CV 14-1646-GHK (FFMx), 2014 WL 12577145, at *4 (N.D. Cal. May 2, 2014) (quiet title inappropriately asserted against Defendants because none of them has an adverse claim to the title, as the Property was sold to a third-party purchaser); *Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1079 (S.D. Cal. 2013) (dismissing quiet title claim because plaintiff failed to allege that defendants had any adverse interests to the property's title given that property was sold to a third party at a trustee sale); *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 802-03 (2013) (dismissing quiet

title claim against creditor because the action was brought after the trustee's sale and the creditor no longer held title to the property).

Here, while a quiet title claim cannot be alleged against Defendant BSI, the loan servicer, it may be brought against the third-party purchaser, U.S. Bank because it has an adverse claim to the title.   As such, Plaintiffs have not stated a claim to quiet title as to BSI but have stated a claim to quiet title as to U.S. Bank.  The Court GRANTS Defendant BSI's motion to dismiss the quiet title cause of action and DENIES Defendant U.S. Bank's motion to dismiss the quiet title claim.

**J.     Thirteenth Cause of Action - Slander of Title**

Defendants argue that the slander of title fails because the recorded documents are not false, and further, the recording of non-judicial foreclosure documents are privileged. (Dkt. No. 3 at 19.)  Plaintiffs disagree.  (Dkt. No. 6 at 27.)

A claim for slander of title must allege "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss."  *Schep v. Capital One, N.A*., 12 Cal. App. 5th 1331, 1336 (2017) (quoting *Manhattan Loft, LLC v. Mercury Liquors, Inc*., 173 Cal. App. 4th 1040, 1050-51 (2009) (internal quotations omitted)).  The recording of the NOD, NTS, and TDUS are privileged.  *Id.*  In *Schlep*, the court of appeal held that the slander of title failed because the NOD, NTS and TDUS supporting the claims were privileged.  *Id*.

Similarly, the Complaint alleges slander of title in connection with the recorded NOD, NTS and TDUS that were allegedly fraudulent and invalid and cast doubt on Plaintiffs' ownership of the property.  (Dkt. No. 1-2, Compl. ¶ 101.)  Accordingly, because recording those documents are privileged, Plaintiffs cannot allege a slander of title claim and the Court GRANTS Defendants' motion to dismiss on this claim.

**K.     Fourteenth Cause of Action - Cancellation of Instrument**

On the claim for cancellation of instrument, Defendants aver that Plaintiffs defaulted on the loan as well as on the prior modification, were reviewed for a modification but denied; therefore, the recorded foreclosure notices are not void or

voidable, and no injury has been demonstrated.  (Dkt. No. 3 at 19-20.)  Plaintiffs oppose. (Dkt. No. 6 at 27.)

California Civil Code section 3412 provides for the cancellation of a written instrument when there is "reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable."  Cal. Civil Code § 3412.  "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable." *Zendejas v. GMAC Wholesale Mortg. Corp*., No. 10cv184 OWW, GSA, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010) (granting motion to dismiss because plaintiffs failed to assert any valid reason, except that the defendants did not have the right to foreclose, why the instruments are void or voidable).  A plaintiff must provide facts, "not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid." *Ephraim v. Metropolitan Trust Co. of California*, 28 Cal. 2d 824, 833 (1946).

The Complaint claims that the NOD, NOTS, TDUS were executed and recorded fraudulently and caused Plaintiffs serious injury of losing the property and eviction as well as damage to their credit, loss of interest, loss of equity as well as payment of exorbitant sum in interest, fees and costs.  (Dkt. No. 1-2, Compl. ¶ 110.)  It also alleges that the recorded documents are facially invalid and are void, or at least voidable.  *(Id.* ¶¶ 111, 112.)  Finally, they allege exceptions to the tender rule.  (*Id.* ¶ 13.)  These allegations are sufficient to state a claim.  Defendants' summary arguments are also belied by the survival of certain HBOR claims discussed above.  Accordingly, the Court DENIES Defendants' motion to dismiss the cancellation of instrument claim.

**L.    Fifteenth Cause of Action – Violation of California Business & Professions Code section 17200**

Defendants further summarily claim that the UCL violations should be dismissed because they are based on the same unsuccessful allegations of HBOR violations.  (Dkt. No. 3 at 20.)

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives [unlawful, unfair or fraudulent] captures a separate and distinct theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir.2010) (quotation marks omitted).  The UCL's coverage is broad, sweeping and embracing of anything that can be properly called a business practice and at the same time forbidden by law.  *Cel–Tech Comms., Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180 (1999).  "It governs 'anti-competitive business practices' as well as injuries to consumers, and has a major purpose 'the preservation of fair business competition.'"  *Id.* (citations omitted)  Standing to bring a UCL claim requires "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.  Here, as discussed above, Plaintiffs have alleged an injury of losing their home and that the violations of HBOR caused the loss of their home by failing to properly consider a loan modification.

Defendants' citation to *Solomon v. Aurora Loan Servs., LLC*, No. CIV. 2:12–209 WBS KJN, 2012 WL 2577559, at *7 (E.D. Cal. July 3, 2012) is distinguishable because in that case the court had already determined in a prior cause of action for negligence that plaintiff "might" be eligible for a loan modification and the subsequent denial of her application were not causally related to plaintiff's loss of property" therefore, the UCL claim necessarily failed.  Further, *Jenkins v. JP Morgan Chase Bank, N.A.,* 216 Cal. App. 4th 497 (2013) is also not supportive because the court concluded there was no causation between the economic injury, the impending foreclosure on her home, and the unfair or unlawful acts allegedly committed by Defendants because the plaintiff admitted that she defaulted on her loan.  *Id.* at 523.  *Jenkins* did not involve HBOR violations but challenged the foreclosing party's authority to foreclose due to improper securitization and lack of compliance with the securitized investment trust's pooling and servicing agreement and the plaintiff's default triggered the foreclosure provision in the deed of trust.  *Id.* at 505, 523.

In this case, prior to foreclosing, HBOR requires the mortgage servicer to provide certain notices and options to borrowers for foreclosure alternatives.  Therefore, per Defendants' argument, because certain HBOR claims survive, Defendants' UCL argument is without merit.  The Court DENIES Defendants' motion to dismiss the UCL claim.

**M.      Sixteenth Cause of Action – Violation of California Civil Code section 2924.11**

Defendants profess that the section 2924.11 claim fails because it only applies where a foreclosure prevention alternative is approved, but in this case, the modification requests were denied.  (Dkt. No. 3 at 21.)  Plaintiffs argue that section 2924.11 applies when a foreclosure prevention alternative is pending and until the borrower has been provided with a written determination.  (Dkt. No. 6 at 28-29.)

The parties rely on different versions of section 2924.11.  The version effective on January 1, 2019 addresses circumstances when "a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default . . . or after the recordation of a notice of default."  Cal. Civil Code § 2924.11(a) (eff. Jan. 1, 2019).  The version effective from January 1, 2018 to December 31, 2018 addresses circumstances when "a borrower submits a complete application for a foreclosure prevention alternative" . . . then the "mortgage servicer . . . shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative."  Cal. Civil Code § 2924.11(a) (eff. Jan. 1, 2018 to Dec. 31, 2018).

Here, Plaintiffs sought a loan modification in January 2020; therefore, Plaintiffs improperly rely on a former version of section 2924.11.  Because there is no allegation that foreclosure prevention alternative was approved, section 2924.11 does not apply.  The Court GRANTS Defendants' motion to dismiss the sixteenth cause of action.

**N.      Eighteenth Cause of Action – Accounting**

Defendants move to dismiss the accounting claim arguing that there is no fiduciary relationship between Plaintiffs and Defendants and there is no balance due from them to the Plaintiffs.  (Dkt. No. 3 at 21.)  Plaintiffs oppose contending they are owed money. (Dkt. No. 6 at 29.)

An accounting action "is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice." *Verdier v. Superior Court in and for City and County of San Francisco*, 88 Cal. App. 2d 527, 530 (1948.  An accounting may be asserted when (1) "a relationship exists between the plaintiff and defendant that requires an accounting"; and (2)" some balance is due to the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (citing *Brea v. McGlashan,* 3 Cal. App. 2d 454, 460 (1934); 5 Witkin, California Procedure § 819 (5th ed. 2008)).  A "fiduciary relationship between the parties is not required to state a cause of action for accounting." *Id.*

The Complaint alleges that there is a relationship between Plaintiffs and Defendants.  (Dkt. No. 1-2. Compl. ¶ 136.)  Second, Defendants have received money from Plaintiffs pursuant to the DOT which Defendants have not properly accounted for and money is due to Plaintiffs.  (*Id.* ¶ 137.)  At this stage, the accounting claim survives and the Court DENIES the motion to dismiss.

**O.    Leave to Amend**

In the event the Court grants dismissal on certain claims, Plaintiffs seek leave to court to file an amended complaint.  Because the Court cannot conclude leave to amend would be futile, the Court GRANTS Plaintiffs leave to file a first amended complaint. *See DeSoto,* 957 F.2d at 658.

## Conclusion

Based on the reasoning above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend.  Specifically, the Court

1    **GRANTS** Defendants' motion to dismiss the second cause of action for violation of section 2923.6 of HBOR, eighth cause of action for fraudulent misrepresentation, ninth cause of action for negligent misrepresentation, twelfth cause of action for quiet title as to BSI, thirteenth cause of action for slander of title, sixteenth cause of action for violation of Civil Code section 2924.11, and seventeenth cause for fraudulent concealment; and

2    **DENIES** Defendants' motion to dismiss the first, third and fourth causes of action for violations of sections 2923.55, 2923.7, 2924.17 of the HBOR, fifth cause of action for breach of contract, sixth cause of action for breach of the covenant of good faith and fair dealing, seventh cause of action for negligence, eleventh cause of action for wrongful foreclosure, twelfth cause of action for quiet title as to U.S. Bank; fourteenth cause of action for cancellation of instruments; fifteenth cause of action for UCL violations; and eighteenth cause of action for accounting.

Plaintiffs shall file an amended complaint on or before **November 13, 2020**. The hearing set on October 23, 2020 shall be **vacated.**

IT IS SO ORDERED.

Dated: October 20, 2020

Hon. Gonzalo P. Curiel
United States District Judge